FILED

January 6, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:09 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

CHARLES MASSENGILL,

        Employee,

v.

MCKENDREE CONCRETE,

        Employer,

and

ARGOS MANAGEMENT,

        Insurance Carrier.

Docket No.: 2014-04-0002

State File No.: 53285-2014

Date of Injury: July 11, 2014

Judge: Pamela B. Johnson

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on the 10th day of December, 2014, upon the Request for Expedited Hearing filed by McKendree Concrete (Employer) and its workers' compensation carrier, Argos Management (Carrier). Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court hereby finds as follows:

### ANALYSIS

#### Issues

1. *Whether Employee sustained an injury arising primarily out of and in the course and scope of employment with Employer;*
2. *Whether Employee sustained an injury in the course of employment with Employer;*
3. *Whether Employee is entitled to additional medical care as recommended by a physician;*
4. *Whether Employee is entitled to an evaluation by another physician;*
5. *Whether Employee is entitled to any past or future temporary total disability (TTD) benefits, and if so, in what amount; and*
6. *Whether Employee is entitled to any past or future temporary partial disability (TPD) benefits, and if so, in what amount.*

1

## Stipulations of the Parties

The parties stipulated to an average weekly wage of $501.22 and a workers' compensation rate of $334.15 per week.

## Evidence Submitted

Employer filed affidavits and other evidence in support of Employer's Request for Expedited Hearing. The Court received and considered the following evidence submitted by Employer:

- Affidavit of Johnny McKendree, pre-marked as Employer's Exhibit A;
- Wage Statement, pre-marked as Employer's Exhibit B;
- St. Thomas Rutherford Medical Records, pre-marked as Employer's Exhibit C, numbered pages 1-27;
- Attending Physician Report, pre-marked as Employer's Exhibit D, numbered page 28
- Choice of Physician, pre-marked as Employer's Exhibit E;
- Medical Records Certification and Medical Records from Valerie White, FNP, Fast Pace Urgent Care, pre-marked as Employer's Exhibit F, numbered pages 29 – 39;
- Medical records from Dr. Jacqueline Coleman, Physicians Urgent Care, pre-marked as Employer's Exhibit G, numbered pages 40 – 41;
- Response of Dr. Jacqueline Coleman, Physicians Urgent Care, as to causation and return to work, pre-marked as Employer's Exhibit H, numbered pages 42 – 43; and
- Medical Records Certification of Dr. Jacqueline Coleman, Physicians Urgent Care, pre-marked as Employer's Exhibit I, numbered page 44.

Employee filed a Response to Employer's Request for Expedited Hearing. The Court received and considered the following evidenced submitted by Employee:

- Medical Records Certification of St. Thomas Rutherford Hospital, numbered page 1
- Medical Records, St. Thomas Rutherford Hospital, numbered pages 2 - 106
- Medical Records Certification of Fast Pace Urgent Care, numbered page 107
- Medical Records of Fast Pace Urgent Care, numbered pages 108 - 127
- Medical Record Certification of Rutherford County EMS;
- Medical Records of Rutherford County EMS;
- Correspondence dated October 2, 2014 to St. Thomas Rutherford Hospital; and
- Weather History for Smyrna, Tennessee dated Friday, July 11, 2014.

2

During the in-person evidentiary hearing, the following exhibits were tendered as evidence by the parties:

**Employee's Exhibit 1:** Medical Certification and Medical Records of St. Thomas Rutherford Hospital, numbered pages 1 – 106;

**Employee's Exhibit 2:** Medical Certification and Medical Records of Fast Pace Urgent Care, numbered pages 107-127;

**Employee's Exhibit 3:** Medical Certification and Medical Records of Rutherford County EMS (unnumbered, 6 pages); and

**Employee's Exhibit 4:** Patient Discharge Instructions, dated July 12, 2014, numbered page 26.

**Employer's Exhibit 1:** Medical Record Certification and limited Medical Records of Valerie White, FNP, and Fast Pace Urgent Care, numbered pages 29 – 39;

**Employer's Exhibit 2:** Medical Report of Dr. Jacqueline Coleman and Physicians Urgent Care dated August 14, 2014, numbered pages 40-41;

**Employer's Exhibit 3:** Letter to/from Dr. Jacqueline Coleman dated October 2, 2014, numbered pages 42-43;

The Court designated the following as the technical record in this claim:

- Petition for Benefit Determination filed August 22, 2014;
- Dispute Certification Notice filed September 26, 2014;
- Employer's Request for Expedited Hearing filed September 30, 2014;
- Employer's Pre-Hearing Brief filed October 7, 2014;
- Employee's Brief for Expedited Hearing filed October 8, 2014;
- Employee's Submission of Evidence filed November 7, 2014;
- Employee's Revised Submission of Evidence filed November 21, 2014;
- Employee's Medical Records Index filed November 21, 2014;
- Employer's Amended Pre-Hearing Brief filed November 21, 2014;
- Employer's Submission of Evidence and Table of Contents filed November 21, 2014; and
- Employee's Witness and Evidence List filed November 25, 2014.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings as allegations unless established by the evidence.

## History of Claim

Employee allegedly sustained an injury arising primarily out of and in the course of his employment with Employer on July 11, 2014. Specifically, Employee alleges that he developed a heat-related injury and/or illness caused by his work for Employer. Employee received certain workers' compensation benefits, including medical benefits. Employee seeks past and future medical benefits and past temporary disability benefits. Employer denies Employee is entitled to any further workers' compensation benefits.

On September 30, 2014, a Request for Expedited Hearing was filed with the Tennessee Court of Workers' Compensation Claims, Division of Workers' Compensation, on behalf of Employer, pursuant to Tennessee Code Annotated section 50-6-239, to determine if the provision of temporary disability and/or medical benefits is appropriate.

The Court conducted a telephonic hearing on December 10, 2014. Employee appeared with his Counsel, William A. Cameron. Employer and Carrier appeared through their Counsel, Kitty Boyte. Johnny McKendree testified on behalf of the Employer. Considering the positions of the parties, the applicable law and all of the evidence submitted, the Court hereby finds that Employee is not entitled to past or future medical expenses or past temporary disability benefits.

## Employee's Contentions

Employee, through counsel, contends that Employer hired Employee on April 21, 2014, and provided a company truck to Employee. Employee began experiencing heat-related symptoms and missed work. On July 11, 2014, while working at Employer's job site, Employee's heat-related symptoms increased. Employee went to a nearby creek to cool off. Employee advised the foreman that he was not feeling well but received no response. As such, Employee went to a business next door and an ambulance was called.

Employee was transported to St. Thomas Rutherford Emergency Room. St. The emergency room physician instructed Employee to go to his primary care physician. The emergency room physician also restricted Employee from driving until cleared by his primary care physician. Employee did not have a primary care physician.

Employer provided Employee with a panel of physicians and Employee selected Fast Pace Urgent Care (Fast Pace) as the provider. Employee saw a nurse practitioner at Fast Pace because a physician was not available to see him until six (6) weeks later. Employer paid some medical expenses, but not all, and Employee still needs medical care. Employer did not pay Employee any temporary total disability benefits. Employee argues he is entitled to past and future medical benefits and past temporary disability benefits.

## Employer's Contentions

Employer, through counsel, contends Employee is not entitled to past temporary disability benefits or past or future medical benefits. Focusing on the issue of temporary total disability

4

benefits, Employee failed to return to work due to his own lack of transportation. Employee's lack of transportation always pre-existed and was not caused by his alleged workplace injury. Employee was not hired to drive the company truck or any other vehicle. Employer gratuitously offered Employee a company truck to drive to work because Employee did not have a vehicle. When Employer made the offer to return Employee to work, it could no longer allow Employee to have control over the company truck because Employee was limited to working outside for no more than two (2) hours, which meant he would have to leave work early. If Employee left early and took the company truck, other employees, who had ridden with him, would be stranded at the job site. Employer maintains that Employee was physically able to return to work and Employer offered work within Employee's restrictions. Employer, however, was not required to provide Employee transportation to/from job site.

Employer avers further that medical records from FNP White and Fast Pace, Employee's Exhibit 1- pages 116, 117, and 121, contain no restriction on driving. Moreover, while Employee's Exhibit 1 - page 111 contains a restriction on driving, the record is inconsistent with the other medical records. Employee's Exhibit 1 – page 111 is signed by Patricia Craig, FNP, but not dated. Moreover, there are no records indicating that Employee was ever evaluated and/or treated by FNP Craig. Employer argues that Employee's Exhibit 1 – page 116 demonstrates that the treating provider, FNP White, opined that there was no reason Employee was not able to return to work on August 11, 2014.

Employer points out that Dr. Jacqueline Coleman evaluated Employee on August 14, 2014, upon referral by Fast Pace. Employer's Exhibit 2 – page 40 notes that Employee refused to answer questions but indicated that he needed a release note for work. Employer's Exhibit 2 – page 41 provides that Employee stated he needed a release note to be able to return to work as a truck driver. Dr. Coleman was unclear as to Employee's job duties as evidenced by Employer's Exhibit 3 – page 42, response to question (2).

Employer argues that the only medical opinion offered on causation is the opinion of Dr. Coleman. In Employer's Exhibit 3 – page 42, Dr. Coleman opines "No" when asked whether "[a]fter reviewing your medical records for your treatment of Mr. Massengill, can you say, within a reasonable degree of medical certainty, that Mr. Massengill's employment 'contributed more than 50% of the need for medical treatment, considering all causes' for the symptoms he was complaining of (sic) any diagnoses." Dr. Coleman further answers "No" when asked "when you examined Mr. Massengill to work (sic) on 08/14/14, was there any medical reason he could not return to his job duties at McKendree Concrete." Further, Employer argues that Employee testified that he has experienced no further symptoms since August or September and has no symptoms currently. Employer asserts that there is no basis for any additional medical treatment and no basis for temporary total disability benefits.

### Findings of Fact and Conclusions of Law

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving

5

party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003) and Tenn. Code Ann. § 50-6-238 (2012). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Employee must show that the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13).

*Factual Findings*

Employee is fifty-two (52) years old. Employer hired Employee as a laborer on April 21, 2014, to perform basic construction and concrete work. At time of hire, Employee informed Employer that he did not have a vehicle to get to/from work. Employer agreed to provide Employee a company truck with the understanding that Employee would be required to transport the job foreman and other employees to/from the shop and job sites.

On July 11, 2014, Employee worked at Employer's job site in Murfreesboro, Tennessee. The job required building boxes, manholes, making forms out of plywood, laying rebar steel, and digging dirt. The day was hot and Employee was working outside. Employee became ill and experienced cramping, nausea, dizziness, chest pain, and breathing difficulties. Employee advised his foreman that he did not feel well and needed a break. Employee went to a nearby creek and immersed himself to cool down. After fifteen to twenty (15-20) minutes, Employee left the creek and returned to the company truck. While leaning against the company truck, Employee advised his foreman that he was not feeling any better and was experiencing shooting pain and spasms. Employee went to the business next door and asked that an ambulance be called.

Employee was transported by Rutherford County EMS to St. Thomas Rutherford Hospital (St. Thomas). Employee reported that he felt "like he was overheating and was trying to cool off" when he began experiencing sudden onset of shortness of breath and chest pain. Employee was diagnosed with (1) acute renal failure; (2) nausea, vomiting, and diarrhea, resolved; and (3) rhabdomyolysis, resolving. "Rhabdomyolysis" is defined as a condition in which skeletal muscle is broken down, releasing muscle enzymes and electrolytes from inside the muscle cells. *See* www.medicinenet.com/rhabdomyolysis/article.htm. St. Thomas discharged Employee with instructions to follow-up with his primary care provider in one (1) week and to avoid driving until approved by a physician.

Prior to the July 11, 2014 incident, Employee experienced similar episodes of cramping, diarrhea, nausea, and dizziness, but denied the same intensity of symptoms as experienced on July 11, 2014. Due to recent similar episodes, Employee made a point to eat and stay hydrated.

On August 8, 2014, Employer provided Employee with a panel of physicians and Employee selected Fast Pace. Valerie White, FNP of Fast Past, evaluated Employee on August 11, 2014, and diagnosed malaise/ fatigue, except chronic fatigue syndrome – no workup; dizziness/ giddiness – no workup; and elevated blood pressure reading without hypertension diagnosis - workup. FNP White recommended limiting outside work in the heat to no more than two (2) hours and no heavy lifting greater than twenty (20) pounds. These restrictions were to remain in place until Employee was able

6

to see Dr. Goodemote, a physician at Fast Pace.

In a chart addendum dated August 15, 2014, FNP White noted "labs normal. I feel he can go back to work." On August 19, 2014, FNP White noted further "INSTRUCTED PATIENT THAT HE IS ABLE TO RETURN TO WORK FULL DUTY. ADVISED PATIENT THAT WE WILL CONTACT WC...ALSO INSTRUCTED PATIENT THAT HE NEEDS TO KEEP PCP APPOINTENT WITH DR. GOODEMOTE BUT THIS WILL NOT BE WORKERS COMP AND PATIENT VERBALIZES UNDERSTANDING." FNP further noted on Medical Record Certification to Employer's counsel submitted by facsimile dated October 3, 2014, "There was no medical reason Mr. Massengill could not return to work at full duty as of 8/11/14. All his labs and exam came back as normal. I stand by my release to full duty."

Dr. Jacqueline Coleman evaluated Employee on August 14, 2014. After physical examination, Dr. Coleman diagnosed Employee with syncopal episodes and heat syncope. Dr. Coleman instructed Employee to follow-up in one (1) week after review of medical records. In a response to a letter from Employer's counsel dated October 2, 2014, Dr. Coleman answered "No" when asked whether "[a]fter reviewing your medical records for your treatment of Mr. Massengill, can you say, within a reasonable degree of medical certainty, that Mr. Massengill's employment 'contributed more than 50% of the need for medical treatment, considering all causes' for the symptoms he was complaining of (sic) any diagnoses." Dr. Coleman further answered "No" when asked "when you examined Mr. Massengill to work (sic) on 08/14/14, was there any medical reason he could not return to his job duties at McKendree Concrete."

Employee last worked for Employer on July 11, 2014. In early August 2014, Employer contacted Employee concerning work available within his restrictions including the two (2) hour maximum outside work restriction. Employer advised Employee that he could work for two (2) hours at the job site, but he would be required to provide his own transportation as no company trucks were available. Employee did not return to work for Employer and did not have transportation to/from the job site. Employee currently works at Norcom, Inc.

*Application of Law to Facts*

*Employee did not sustain an injury arising primarily out of and in the course and scope of employment with Employer.*

The Tennessee Workers' Compensation Act defines "injury" and "personal injury" as an injury by accident,... arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that:

> (A) An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment;

7

(B) An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;

(C) An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes;

(D) "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility;

(E) The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence.

Tenn. Code Ann. § 50-6-102(13) (2014).

In the present case, Employee suffered a heat-related injury "caused by a specific incident, or set of incidents," and "identifiable by time and place of occurrence." However, Employee has failed to show "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." The opinion of the treating physician shall be presumed correct on the issue of causation. Here, Dr. Coleman is the only physician to offer an opinion on causation and opines "No" when asked "[a]fter reviewing your medical records for your treatment of Mr. Massengill, can you say, within a reasonable degree of medical certainty, that Mr. Massengill's employment 'contributed more than 50% of the need for medical treatment, considering all causes' for the symptoms he was complaining of (sic) any diagnoses." Based upon the evidence at this time, the Court must find that the July 11, 2014 injury did not arise primarily out of and in the course and scope of employment. Because of this Court's finding on the first issue, the remaining issues are moot at this time.

**IT IS, THEREFORE, ORDERED** that the claim of Employee against Employer or its workers' compensation carrier for the requested workers' compensation benefits is denied at this time on the grounds of compensability.

**ENTERED** this the ___6th___ day of **January, 2015.**

**PAMELA B. JOHNSON**
**Workers' Compensation Judge**

8

Initial Hearing:

An Initial Hearing has been scheduled for *Wednesday, February 25, 2014 at 9:00 am CDT/ 10:00 am EDT* with Judge Pamela B. Johnson. You must call *(865) 594-0091* or toll free at *(855) 543-5041* to participate in the Initial Hearing.

You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the _6th_ day of January, 2015.

| Name | Certified Mail | Via Fax | Via Email | Sent to: |
|------|----------------|---------|-----------|----------|
| William A. Cameron, Esq. | | | X | vanaa@frontiernet.net |
| Kitty Boyte, Esq. | | | X | kboyte@constangy.com |

**PENNY SHRUM, COURT CLERK**
**Court of Workers' Compensation Claims**

10